**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY**<br>**ONE PARK CIRCLE**<br>**WESTFIELD CENTER, OH 44251,**<br>***Plaintiff***<br><br>**v.**<br><br>**FROEHLING & ROBERTSON, INCORPORATED**<br>**3015 DUMBARTON ROAD**<br>**HENRICO, VA, 23228–5831,**<br><br>**and**<br><br>**BRANDON'S PLUMBING, LLC**<br>**755 HEATHGATE DRIVE**<br>**LAWRENCEVILLE, GA 30044,**<br><br>**and**<br><br>**KINSALE INSURANCE COMPANY**<br>**425 WEST CAPITOL AVE., SUITE 1800**<br>**LITTLE ROCK, AR 72201**<br>***Defendants*** | **CIVIL ACTION NO.:**<br><br>**JURY DEMAND ENDORSED HEREON** |

**COMPLAINT**

Plaintiff, Westfield Insurance Company, by and through its undersigned counsel, hereby demands judgment against Defendants, Froehling & Robertson, Incorporated, Brandon's Plumbing, LLC, and Kinsale Insurance Company and complains against them as follows:

**PARTIES**

1. Westfield Insurance Company ("Plaintiff" or "Westfield") is a commercial entity organized and existing under the laws of the State of Ohio, with its principal place of business located at One Park Circle, Westfield Center, OH 44251.

2. At all times relevant hereto, Westfield was duly authorized to engage in the business of insurance, as well as related businesses, in the Commonwealth of Virginia.

3. At all times relevant hereto, Westfield provided liability insurance, *inter alia,* to G&M Mechanical, LLC ("G&M" or "Subrogor") in connection with its work as a mechanical and/or plumbing contractor, under a policy of insurance that was in full force and effect on all relevant dates, and at all relevant times.

4. In the wake of the damage described below, as a result of a claim made on said policy (which was duly paid pursuant thereto), Westfield became subrogated to certain recovery rights and interests of G&M for monies paid thereunder, including the claims giving rise to the within cause of action.

5. Upon information and belief, Defendant, Froehling & Robertson, Incorporated ("F&R," or collectively with the other defendants "Defendants"), is a Virginia corporation with its principal place of business located at 3015 Dumbarton Road, Henrico, VA 23228-5831.

6. Upon information and belief, F&R was engaged in the business of, *inter alia,* geotechnical engineering, environmental consulting and materials testing services, and as such did mark post-tension cables in a concrete slab at issue in this case.

7. Upon information and belief, Defendant, Brandon's Plumbing, LLC ("Brandon's Plumbing," or collectively with the other defendants "Defendants"), is a Georgia domestic limited liability company whose only member is, upon information and belief, a citizen of the State of Georgia.

8. Upon information and belief, Brandon's Plumbing was engaged in the business of, *inter alia,* plumbing work, and as such did core drilling into a concrete slab at issue in this case.

9. Upon information and belief, Kinsale Insurance Company ("Kinsale" or collectively with the other defendants "Defendants"), is an Arkansas corporation, with its principal place of business located at 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201.

10. Upon information and belief, Kinsale was duly authorized to engage in the business of insurance, as well as related businesses, in the Commonwealth of Virginia, and as such did provide insurance coverage to Brandon's Plumbing at all relevant times.

## JURISDICTION

11. Jurisdiction is based on 28 U.S.C. §1332(a)(1), as this action involves a controversy between citizens of different states and the amount at issue is above the jurisdictional limits: Plaintiff is an Ohio corporation with its principal place of business located at One Park Circle, Westfield Center, OH 44251; F&R is a Virginia corporation with its principal place of business located at 3015 Dumbarton Road, Henrico, VA 23228-5831; Brandon's Plumbing is a Georgia domestic limited liability company with its principal place of business located at 755 Heathgate Drive, Lawrenceville, Georgia 30044; and, Kinsale is an Arkansas corporation with its principal place of business located at 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201.

12. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

13. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

14. Prior to March 25, 2023, Cathcart Construction, LLC ("Cathcart") retained G&M

to provide mechanical and/or plumbing related work for a project at the Gallery at Godwin, 3061 Godwin Boulevard, Suffolk, VA 23434 (the "subject project").

15. Prior to March 25, 2023, G&M retained F&R to mark post-tension cables in a concrete slab for the subject project, as set forth more specifically in the Authorization of Services, attached hereto as **Exhibit A**.

16. Prior to March 25, 2023, G&M retained Brandon's Plumbing to perform services, including core drilling into a concrete slab for the subject project, as set forth more specifically in the Master Service Agreement, attached hereto as **Exhibit B**.

17. On or about March 25, 2023, F&R is alleged to have failed to accurately mark where post-tension cables were buried within certain concrete slab at the subject project.

18. On or about March 25, 2023, Brandon's Plumbing was drilling into the concrete slab for the subject project when it contacted certain post-tension cables.

19. At that time, instead of stopping and reevaluating the circumstances, Brandon's Plumbing continued its drilling, severing the cables and causing property damages related to the subject project.

20. The property damages involved were not incurred as to physical property for which Brandon's Plumbing was engaged to do any work on, and instead such damages included, *inter alia,* temporary emergency shoring, slab/tendon repairs, design-related cost and oversight, third party inspections, and the impact to such work on other subcontractors.

21. Brandon's Plumbing was not engaged to do any work on or with tension cables buried in concrete, shoring, slab repairs, or with regard to these related damages.

22. As a result of the post-tension cables being severed, Cathcart did not pay G&M the full amount of the agreed upon price per the subcontract agreement, and demanded reimbursement

and/or repair of such property damages from G&M.

23. In response to such claims asserted by Cathcart against G&M, G&M undertook such repairs directly and through the payment for additional expenses and services from others, all totaling approximately $313,000.

24. By operation of payments made by Plaintiff pursuant to the terms and conditions of the aforementioned liability insurance policy, Plaintiff became subrogated to G&M's claims against others responsible for such losses, as asserted in this action.

**COUNT I – BREACH OF CONTRACT v. F&R**

25. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

26. In causing the damage as alleged herein, F&R breached the terms of its agreement with Plaintiff. *See* Authorization of Services, attached as **Exhibit A**.

27. Specifically, the Terms and Conditions of the Authorization of Services states, in relevant part:

> Standard of Care—F&R agrees to perform all services using the degree of care and skill ordinarily exercised by reputable members of F&R's profession practicing in the same or similar locality under similar conditions at that time.

**Exhibit A**, p. 2.

28. Based upon a post incident investigation, F&R breached such provision and did not undertake the identification and marking of underground lines in comporting with proper standards – leading to the damages arising from contact with such underground elements, as noted above.

29. For its part, G&M performed all of its obligations under the aforementioned agreement, as well as all conditions precedent to recovery on this cause of action.

30. As a direct and proximate result of such breach of contract, G&M sustained the aforementioned losses.

31. By operation of payments made pursuant to the terms and conditions of the aforementioned Westfield insurance policy, Plaintiff became subrogated to G&M's claims for responsibility for such losses, as asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant F&R in an amount in excess of $313,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT II– BREACH OF CONTRACT v. BRANDON'S PLUMBING**

32. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

33. In causing the damage as alleged herein, Brandon's Plumbing breached the terms of its agreement with Plaintiff. *See* Master Subcontract Agreement, attached as **Exhibit B**.

34. Specifically, the Master Subcontract Agreement states, in separate relevant parts:

> **2. Subcontractor's Work**
> a. Subcontractor shall perform all work … necessary for the construction and completion of the work described in each individual Work Order, including work incidental thereto and reasonably inferable therefrom, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and the Owner (hereinafter "Work").
>
> **4. Indemnification and Subcontractor's Liability**
> c. [T]he Subcontractor shall indemnify, defend, and hold harmless the Contractor, Owner and their respective officers, directors, employees and agents ("Indemnified Parties") from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities, (including all costs reasonable attorneys' fees, consequential damages, and punitive damages), arising out of or resulting from, or alleged to arise out of or arise from, the performance of Subcontractor's Work under the Subcontract, and any Work Order whether such claim, damage, demand, loss or expense is attributable …to injury to or destruction of tangible property, including the loss of use resulting therefrom; but only to the

> extent attributable to the negligence of the Subcontractor or any entity for which it is legally responsible or vicariously liable….
>
> **Exhibit A. Insurance Provisions**
> Before commencing the Work on any individual Project, and as a condition precedent to any payment, the Subcontractor shall purchase and maintain insurance in conformance with the provisions contained in this Exhibit A. …
>
> *Additional Insured Status and Certificate of Insurance*
> The Contractor and Owner, along with their respective officers, agents and employees, shall be named as additional insureds for Ongoing Operations and Products/Completed Operations on the Subcontractor's and any Sub-Subcontractor's Commercial General Liability Policy, which must be primary and noncontributory with respect to the additional insureds. ...
>
> It is expressly understood by the parties to this Subcontract that it is the intent of the Parties that any insurance obtained by the Contractor is deemed excess, non-contributory and not co-primary in relation to the coverage(s) procured by the Subcontractor, the Sub-Subcontractor or any of their respective consultants, officers, agents, subcontractors, employees….

35. Other provisions of the agreement may also form the basis of liability herein.

36. As demonstrated above, the damages were caused in part by the negligence of Brandon’s Plumbing, and under the agreement terms above, such Defendant was required to indemnify G&M for the damages arising from such conduct in breach of the contract.

37. Neither Brandon’s Plumbing, nor its insurer, have indemnified or reimbursed G&M or Plaintiff for such losses.

38. Defendant Kinsale, as insurer for Brandon’s Plumbing, has also failed to honor any additional insured status for G&M, and indemnify for the losses, and to the extent that is due to any lapses on the part of Brandon’s Plumbing in securing proper liability insurance in which G&M is an additional insured, such actions would be in breach of the contract.

39. For its part, G&M has performed all of its obligations under the aforementioned agreement, as well as all conditions precedent to recovery on these breach of contract causes of action.

40. As a direct and proximate result of such breach or breaches of contract, G&M sustained the aforementioned losses.

41. By operation of payments made pursuant to the terms and conditions of the aforementioned Westfield insurance policy, Plaintiff became subrogated to G&M's claims for responsibility for such losses, as asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant Brandon's Plumbing in an amount in excess of $313,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT III– EQUITABLE CONTRIBUTION v. KINSALE**

42. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

43. As noted above, the Master Subcontract Agreement with Brandon's Plumbing required it to purchase and maintain liability insurance and to name G&M as an additional insured, providing primary and noncontributory liability insurance to G&M.

44. At all times relevant hereto, Plaintiff provided liability insurance coverage to G&M, but under such policy, Plaintiff's coverage would be excess to any other insurance that would afford coverage to G&M.

45. Upon information and belief, Kinsale likewise provided liability insurance coverage to G&M as an additional insured under its insurance policy provided to Brandon's Plumbing.

46. Plaintiff's policy was excess over Kinsale's policy.

47. Nonetheless, Kinsale has refused to protect and indemnify G&M (or Plaintiff), and

Plaintiff was compelled to resolve and reimburse G&M for the claim asserted against it and the associated damages and expenses.

48. As a result, Westfield contributed more than its fair share on G&M's behalf.

49. Kinsale unjustly benefited from Westfield's coverage and resolution, eliminating the amount that Kinsale would have to have paid under its policy of liability insurance.

50. Under Virginia law, where two or more insurance carriers may be liable to pay a claim and one of them pays the whole of it, the one so paying may generally recover from the other the value of any reasonable claim paid. *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.*, 216 Va. 926 (1976).

51. Such equitable contribution under Virginia law does not arise out of any express contract or agreement between the insurance carriers to indemnify each other, but is based on the broad principles of equity where two or more persons are subject to a common burden.

52. As Kinsale's policy was primary, and Westfield's was excess above that, Kinsale should reimburse Westfield for the entirety of its payment in excess of $313,000, or any other amount deemed equitable under the law.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant Kinsale in an amount in excess of $313,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

Date: August 28, 2026

Respectfully submitted,

**WESTFIELD INSURANCE COMPANY**

*_/s/ K. Barrett Luxhoj_*
James L. Chapman, IV, Esq. (VSB No. 21983)
K. Barrett Luxhoj, Esq. (VA Bar No. 86302)
CRENSHAW, WARE & MARTIN, P.L.C.

150 W. Main Street, Suite 1923
Norfolk, VA 23510
Telephone: 757-623-3000
Facsimile: 757-623-5735
jchapman@cwm-law.com
kbluxhoj@cwm-law.com

*and*

Kenneth Levine, Esq. *(To be Admitted Pro Hac Vice)*
Matthew Connolly, Esq. *(To be Admitted Pro Hac Vice)*
**DE LUCA LEVINE LLC**
301 E. Germantown Pike, Ste. 300
E. Norriton, PA 19401
Phone: 215.588.5085
Facsimile: 703.591.9285
KLevine@deLucaLevine.com
MConnolly@delucalevine.com

*Counsel for Plaintiff*